E. ZABRISKIE, APPELLEE, V. GREATER AMERICA EXPOSITION COMPANY ET AL., APPELLEES, IMPLEADED WITH CHICAGO HOUSE WRECKING COMPANY, APPELLANT.

FILED FEBRUARY 17, 1903.   No. 12,625.

Commissioner's opinion, Department No. 1.

Mechanic's Lien: LEASEHOLD INTEREST. A mechanic's lien attaches to a leasehold interest and to buildings erected by one tenant and sold to another, who has acquired a lease of the same

Syllabus by court; catch-words by editor.

interest, and this, notwithstanding the removal of the buildings at the end of the term is expressly required by the lease.

APPEAL from the district court for Douglas county. Action to foreclose a mechanic's lien for materials furnished and labor performed. Heard below before DICKINSON, J. Judgment for plaintiff. *Affirmed.*

*James M. Woolworth, William Douglas McHugh* and *Timothy J. Mahoney,* for appellant.

*James W. Hamilton* and *Henry Maxwell,* for appellee Zabriskie.

*Richard S. Horton,* for himself.

LOBINGIER, C.

This is a suit to foreclose a statutory lien for materials furnished and labor performed in repairing certain buildings of the Greater America Exposition at Omaha. The company which promoted and carried on this exposition acquired its interest in these buildings and the land whereon the same were situated through an instrument executed by a purchaser from the Trans-Mississippi and International Exposition, which had maintained a similar enterprise on the same site during the previous year. This instrument purported to pass "all the buildings, fences, trees, shrubs, plants, colonnades, booths, water and sewer-pipes, electric plant, wires, appliances, appurtenances, * * * and also all right, title and interest, including leaseholds, of the said Trans-Mississippi and International Exposition to or in the said exposition grounds." But this grant was expressly made "subject to the contracts, agreements and obligations of the Trans-Mississippi and International Exposition with the various property holders in the city of Omaha to restore to their original condition the grounds, buildings and property taken possession of or occupied by the said Trans-Mississippi and International Exposition." The Greater Amer-

ica Exposition Company also entered into a lease for one year with the fee owner of the grounds on which the buildings were situated, by which it undertook: "That it will use said lands for exposition purposes only; that by and upon the expiration of the term herein limited, it will refill in a thoroughly good and substantial manner all excavations at any place and time made on said lands since the entry thereon of said Trans-Mississippi and International Exposition; that by and upon the expiration of the term herein limited it will remove from said lands all buildings and structures and all debris of every description whatsoever."

One of the buildings in which the materials sued for was used is thus described by a witness, and the description will apply generally to the buildings in controversy: "The power-plant building was constructed of heavy timbers as framework, and sheeted outside with corrugated iron, also roofed with corrugated iron; and the foundation of the building consisted of piling driven in the ground, and the foundation timbers fastened to the same. The floor was of wood construction—that is, the machinery part of it—with heavy joists or sleepers covered with heavy lumber; and the boiler-room was constructed, the flooring was of concrete or slag—some kind of stone. * * * The foundations for the engines and dynamos were built of brick and concrete. There were excavations made in the ground, to considerable depth, enough to make them perfectly suitable, and bolts, extending up from the foundations, imbedded in the concrete, and these bolts extending up over the frame of the engines and also the frame of the dynamos."

A decree was rendered below finding that plaintiff was entitled to a lien as prayed, and from this the exposition company and its vendee, the Chicago House Wrecking Company, appeal.

It is contended by appellants that the exposition buildings "were merely trade-fixtures"; that as personal property they were not subject to a mechanic's lien, but that

they must have entered into and become a part of the realty. We are cited to cases from certain jurisdictions holding that there can be no such lien on a building distinct from the land. *Kellogg v. Littell & Smythe Mfg. Co.*, 1 Wash. St., 407; *Belding v. Cushing*, 1 Gray [Mass.], 576. Cf. *Coddington v. Dry Dock Co.*, 31 N. J. Law, 477. These cases appear to be greatly in the minority. "The general rule undoubtedly is that a lien may exist upon the building alone under certain circumstances." 20 Am. & Eng. Ency. of Law [2d ed.], 284, where the authorities are set out *in extenso*. The Massachusetts case above cited was decided under a statute no longer in force. The present doctrine in that jurisdiction is thus stated: "In our opinion this makes it clear that Gen. Sts., c. 150, and Pub. Sts., c. 191, were intended by the legislature to give a lien upon buildings the owner of which had no estate or interest in the land upon which the building was erected, as well as upon any interest which the owner of a building might have in land on which it might be erected, and that the lien might extend to a building erected upon land although the building was personal property." *Forbes v. Mosquito Fleet Yacht Club*, 175 Mass., 432, 436.

In our neighboring state of Iowa the statute provides, like our own,* a lien "upon such building * * * and upon the land." Code (1897), sec. 3089. This has been construed to subject a building to a lien, though the owner of it was a trespasser on the land whereon it was located. *Lane v. Snow*, 66 Ia., 544. Cf. *Smith v. St. Paul Fire & Marine Ins. Co.*, 106 Ia., 225. In *Mahon v. Surerus*, 9 N. Dak., 57, the court, in construing a statute which gives a

---

*As to the rule that a state which adopts the statute of another state, *ipso facto*, adopts the construction placed thereon by the court of last resort of that state, see *Franklin v. Kelly*, 2 Nebr., 79, 104; *Hallenbeck v. Hahn*, 2 Nebr., 377; *O'Dea v. Washington County*, 3 Nebr., 118; *Bohanan v. State*, 18 Nebr., 57, 73, 74; *Parks v. State*, 20 Nebr., 515, 518; *Coffield v. State*, 44 Nebr., 417, 423; *Forrester v. Kearney Nat. Bank*, 49 Nebr., 655, 663; *Morgan v. State*, 51 Nebr., 672; *Rhea v. State*, 63 Neb., 461; *State v. McBride*, 64 Neb·., 547, 549; *Goble v. Simeral*, 67 Nebr., 276—W. F. B.

lien "upon such building   *   *   *   and upon the land,"*
adjudged a lien on a house on a government homestead,
and said (p. 60) : "The lienholder might in any case have
the building sold separately and removed.   This was a
valuable right.   It often happened, in the early settlement
of Dakota territory, that expensive buildings were erected,
and subsequent events, such as the locating of railroads
or changing of business centres, rendered them practically
worthless where they were, but they would have value if
they could be removed.   Our construction of these statutes
leads to the conclusion that plaintiffs had a lien upon the
house that in no manner affected the land.   It will be
noticed that the right to remove the building is not de-
pendent upon the manner in which the building is at-
tached to the land.   It may stand upon blocks, or it may
rest upon the most substantial stone or brick foundation."

In *Dustin v. Crosby,* 75 Me., 76, the court, in speaking
of a lien such as our statute affords, observes (p. 76) :
"It is a lien upon the realty if the debtor owns realty, and
upon the building as personalty if the debtor owns the
building only."

The Alabama statute has been thus construed:   "The
declaration is clearly made in the statute, that the lien
shall be good upon these structures, 'and' upon the land
on which they are situated, to the extent of one acre.
Code, §§ 3440, 3444.   It is a several, and not a joint lien;
and both the letter and spirit of the law contemplate that
the improvements erected may, in proper cases, be sub-

* Compiled Laws (1887), section 5469.   This section must be read
in connection with section 5480 of Compiled Laws, which is quoted
with section 5469 in the opinion cited above.   A decision in a me-
chanic's-lien case is necessarily a statutory decision.   But I would
advise any lawyer, before he cites this case as authority, to read
the case in connection with the statute which it construes.

In this case it was also held that the party residing upon such
land, and for whose immediate use the house was built, was the
owner of the land under the terms of section 5483, Compiled Laws,
which reads as follows:   "Every person for whose immediate use
and benefit any building, erection or improvement is made, having
the capacity to contract, including guardians of minors, or other
persons, shall be included in the word 'owner' thereof."—W. F. B.

jected to sale and removal from the premises by the purchaser." *Bedsole v. Peters,* 79 Ala., 133, 136, 137. Cf. *Buchanan v. Smith,* 43 Miss., 90; *Ombony v. Jones,* 19 N. Y., 234.

The proposition that a building is not subject to a mechanic's lien unless it enters into and forms a part of the realty, has not been adopted by this court. It is now well settled that a lien attaches to a leasehold interest and to buildings erected by the tenant. *Moore v. Vaughn,* 42 Nebr., 696; *Waterman v. Stout,* 38 Nebr., 396; *Henry & Coatsworth Co. v. Fisherdick,* 37 Nebr., 207. Now, a leasehold interest is but a chattel, however long its term. "It is only personal estate if it be for a thousand years." 2 Kent's Commentaries, \*342. The doctrine contended for would, if carried to its logical conclusion, preclude the attaching of a mechanic's lien, unless the owner of the building were also the owner of the fee.

Stress is laid upon the fact that by the terms of its lease the Greater America Exposition Company is required to remove these buildings at the end of the term. This fact does not appear to have prevented the attaching of a lien in the cases already referred to. In *Lane v. Snow,* 66 Ia., 544, the owner of the building was, as has been said, a trespasser. Under the conceded facts of that case he had no right to erect the building on that land at all, and his duty to remove was immediate, and not, as here, fixed at a considerable time in the future. A lien was, nevertheless, allowed. In *Pickens v. Plattsmouth Land & Investment Co.,* 31 Nebr., 585, the owner of the building had at the time the lien was enforced apparently no interest in the land at all. When he built he had a contract of purchase with the owner of the land, but this was subsequently abandoned, and, as he does not seem to have acquired any new right, his duty, or at least right, of removal would seem to have arisen by virtue of the abandonment. A lien was declared, however, against the building, and the doctrine of the case in this regard is not changed on the second hearing in 37 Nebr., 272. In *Hath-*

*away v. Davis,* 32 Kan., 693, where a tenant expressly reserved the privilege of removing any and all improvements, the lien was held to attach not only to the leasehold interest and the building erected by the tenant, but also to machinery and fixtures. In *Jessup v. Stone,* 13 Wis., 521, it is said concerning the owner of the building (p. 523) : "If his interest in the land is that of a mere occupant, having the right to remove whatever buildings he might place upon it, then this right of occupancy and removal would go to the mechanic, or those obtaining occupancy under his lien."

There would seem to be little, if any, legal difference whatever on this point between reserving the right to remove and imposing the duty to do so. In either case, removal is so far contemplated as to afford room for the contention that the building is personalty. In either case, moreover, the fact of a failure to remove during the term of the lease would be the same—the buildings would become the property of the lessor. See *Friedlander v. Ryder,* 30 Nebr., 783; *Free v. Stuart,* 39 Nebr., 220. In a case like the one before us the lessor might also have an action for damages resulting from the failure to remove, but this could hardly change the legal character of the buildings.

Counsel for appellants have, with commendable industry, collected for us a large number of authorities determining questions concerning liens on fixtures. We have examined these with care, and are ready to concede that a lien can not be acquired on merely portable and unattached articles. Many of these cases, however, were decided under statutes unlike our own, and others are rendered inapplicable here by the holding of this court in *United States Nat. Bank v. Bonacum,* 33 Nebr., 820, that a lien will attach even to a furnace when placed in a building. This disposes of cases like *Union Stove Works v. Klingman,* 20 App. Div. [N. Y.], 449, 46 N. Y. Supp., 721. We have already seen that under the present Massachusetts doctrine a lien attaches even though the building be treated as personalty. And in *Ombony v. Jones,* 19

N. Y., 234, 235, a lien was upheld on a ball-room, described as follows: "The ground was graded, and the building placed upon stone pillars, which were sunk into the ground from one to two feet. The pillars were laid up without any kind of cement, and the sills of the building placed thereon, but in no manner attached thereto, except by the weight of the building. The building was not attached to any other building upon the premises." This, it will be seen, was hardly, if at all, more permanent in character than the structures here in controversy. But the court said concerning it (p. 239) : "There was nothing in the mode of its annexation to the soil, or to the main edifice, which necessarily imparted to it the legal characteristics of immovability. It could be detached and taken away without injury to the reversion. Beyond all doubt, it would be real estate, as between vendor and vendee of the land, or between the heir and the executor of the owner."

As the sole ground of complaint in this case is that the property is not subject to a mechanic's lien, we feel constrained to recommend that the decree be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the decree of the district court be

AFFIRMED.

NOTE.—For a note of all Nebraska decisions in mechanic-lien cases up to that date, see 60 Nebr., pp. 88-90. See note to preceding case in this volume.—W. F. B.