WILLIAM MYERS, APPELLANT, v. UNION NATIONAL BANK OF FREMONT, APPELLEE.

FILED DECEMBER 1, 1926. No. 24990.

1. **Fraud: PROOF.** "To maintain an action for damages for false representation, the plaintiff must allege and must prove what representation was made; that it was false and so known to be

by the defendant charged with making it, or else was made without knowledge as a positive statement of known fact; that the plaintiff believed the representation to be true; that he relied on and acted upon it, and was thereby injured." *Scovel v. Isham*, 113 Neb. 238.

2. ————: DIRECTION OF VERDICT. Evidence examined, and *held* insufficient to establish fraud as against the defendant; and that the court did not err in directing a verdict for the defendant.

APPEAL from the district court for Dodge county: ANSON A. WELCH, JUDGE. *Affirmed.*

*Dolezal, Spear, Mapes & Stevens* and *J. C. Cook*, for appellant.

*Courtright, Sidner, Lee* and *Gunderson, Contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DAY, J.

As frequent mention will be made in the course of this opinion to the Union National Bank, the First National Bank, and the Fidelity Trust Company, all of Fremont, Nebraska, they will, for the sake of brevity, except as otherwise designated, be referred to respectively as defendant, the bank and the trust company.

The plaintiff brought this action to recover from the defendant $9,400, with interest thereon from September 5, 1921, as damages claimed to have been sustained by him by reason of certain representations made by the bank, which plaintiff relied upon and believed to be true in purchasing a debenture for $9,400 issued by the trust company; that the representations were false and that plaintiff was damaged thereby. The representations alleged to have been made by the bank were that the debenture was secured by first mortgages on real estate; that the mortgages were held in trust by the bank for the benefit of the debenture holders. There was also a charge of conspiracy between the bank and the trust company to issue the debenture of

Myers v. Union Nat. Bank.

the trust company for the purpose of defrauding the public and the plaintiff, by falsely representing that the debentures were secured by first farm mortgages and that the same were held in trust by the bank for the protection of the debenture holders. There is no charge of wrongdoing on the part of defendant, but it is sought to be held liable for the tortious acts of the bank by reason of a contract, to which future reference will be made.

The answer of defendant denied that any fraudulent representations were made by the bank, denied the existence of any conspiracy between the bank and the trust company, and denied generally the allegations of the petition, except the formal allegation respecting the corporate capacity of the several institutions. As an affirmative defense, the answer alleged that the bank, in assuming to act as trustee for the holders of the debentures issued by the trust company, was acting beyond the scope of its charter as a National Bank, and the acts of its officers in that regard were *ultra vires* and not binding on the bank.

At the close of the testimony on behalf of the plaintiff, on motion of the defendant, the court directed the jury to return a verdict for defendant, which was done, and thereupon judgment was entered dismissing plaintiff's action. From this judgment, plaintiff has appealed. The ruling of the court on the motion to direct a verdict presents the principal error complained of by the plaintiff.

At the outset it may be observed that the action is brought solely against the defendant, and its liability, if any, rests upon a contract by which it is claimed it assumed the tort liability of the First National Bank. It appears that the First National Bank failed and a receiver was duly appointed to wind up its business affairs. With the approval of the court, a contract was entered into between the defendant and the receiver by which defendant took over the assets of the failed bank, with certain exceptions, and in consideration thereof agreed to assume and carry out all of the liabilities and obligations of the failed bank, with certain exceptions not material to our present inquiry.

Under the issues tendered by the petition, in order to hold defendant liable, it was necessary for the plaintiff to establish actual fraud perpetrated by the bank in inducing the plaintiff to purchase the debenture, or the existence of a conspiracy between the bank and the trust company to commit the fraudulent acts complained of, coupled with proof of the fraud on the part of the trust company. If a conspiracy to commit the fraudulent acts had been shown, then the acts and doings of the several conspirators in carrying out the fraudulent scheme would be binding on the bank and the trust company alike.

The record shows that the bank was chartered under the banking laws of the United States and the trust company was organized in 1911 under the laws of this state. These two institutions, at the time of the happening of the matters complained of, had their respective places of business on the same floor of a large building, and while each had a separate street entrance the interior arrangement was such that there was ready access from one to the other both in front and behind the counter.

It appears that on March 5, 1920, the plaintiff called at the bank and inquired of one of the officers the amount of interest the bank would pay on deposits. In the course of conversation the officer suggested to the plaintiff that he see the trust company and inducted him to the door of that institution. The plaintiff then talked to Mr. Donahue, secretary and treasurer of the trust company, who told him that the trust company was issuing debentures secured by first farm mortgages upon which it paid 5 per cent. During the conversation between plaintiff and Donahue, none of the officers of the bank were present. We quote a part of the plaintiff's testimony: "Q. Now, then, Mr. Myers, with reference to the security back of it, the mortgages that secured it, what did Mr. Donahue say about that? A. I said, Donahue, when I put it in there I don't want it loaned on anything only first mortgages. Q. What did he say? A. He said if they found a second mortgage in

Myers v. Union Nat. Bank.

the building the doors would be closed, and when I found the doors were closed I supposed they had found one. He said the inspector would come around, and if there was a second mortgage in that building the doors would be closed, and when I heard of it I supposed they had found one. Now, sir, that is straight." He further testified in answer to a question: "He told me not to worry, not to lose any sleep, because I was perfectly safe. The trust company was perfectly safe, not to worry a minute. He said, 'The trust company is solid and all right.' And I took his word for it that far. Q. Now, with reference to the bank, what did Mr. Donahue tell you about the signature of the bank? Why was it to be signed by the bank? A. He went right in there and they signed it while I was still there, the same day it was wrote out. I stood right near the door when they signed it up." He further testified that when the debenture became due it was renewed for another twelve months. On cross-examination, he testified that he gave Donahue a check or draft or something of that kind on March 5, 1920; that Donahue made out the debenture and went to the forward part of the building and somebody in the bank signed it.

The debenture, delivered to the plaintiff March 5, 1920, and the renewal thereof in 1921 are identical in form. The debenture, upon its face, recited that the trust company had received from William Myers and Betsy Ann Myers $9,400 in trust, which it agreed to repay to either of the above named parties or the survivor on the surrender of the certificate March 5, 1921, with interest at 5 per cent. per annum, payable semiannually. The certificate was renewed March 5, 1921, due and payable one year from date. The record is silent as to what, if anything, was said at the time of the renewal. Both certificates also contained a recital as follows:

"The funds represented by this certificate are invested in notes secured by first farm mortgages which are deposited with and held by the First National Bank of Fremont, Nebraska, as trustee in trust for the owner and holder of

this debenture. The proportion of said notes equal to the first mentioned amount, together with a *pro rata* interest in the security given, is and shall be considered the collateral property of the owner and holder of this debenture, but no right herein set forth shall affect the right of said Fidelity Trust Company to accept payment on such deposited securities, to execute and deliver releases of mortgages paid, or to substitute securities of equal value with said trustee, provided that all such securities either in the initial deposit or in substitution for withdrawn securities shall be such as to comply with laws of the state of Nebraska governing the investment of funds of trust companies."

On the back of the debenture was a certificate as follows:

"Trust Deposit Certificate. Securities referred to in the within debenture have been deposited with us by the Fidelity Trust Company to be held in trust for the holder of the debenture and subject to its terms. (Signed) First National Bank, Fremont, Nebraska, by H. Beckman, Vice-president."

It appears that on March 5, 1920, when the debenture was issued the total amount of outstanding debentures was $270,234.46 and the outstanding mortgages held by the trust company, including those which had been deposited in trust with the Bank, were $350,633.75. The trust company kept no separate account of the mortgages and securities held by the bank in trust, but it appears from the statement made by the trust company to the banking department of the state June 30, 1920, that the bank was holding mortgages in trust for the debenture holders on that date amounting to $122,725. From this, we think it may fairly be assumed that the trust company did not have on deposit with the bank mortgages of the face value anywhere near equal to the amount of debentures issued March 5, 1920. On March 5, 1921, when the original debenture was renewed, the total outstanding debentures were $214,-418.63 and the total mortgage loans held by the bank $98,-563.75. In any view which may be taken of the evidence, it would seem that the trust company did not have on de-

posit with the bank first farm mortgages to secure the amount of debentures issued.

Both institutions closed their doors October 31, 1921, and receivers were appointed respectively to close up the business. By order of the court the receiver of the bank turned over to the receiver of the trust company mortgages and securities held by the bank in trust. These securities consisted of first mortgages, village warrants, certificates of deposit, bank stocks, bonds and miscellaneous securities of the approximate value of $275,000. Many of these securities were second mortgages, some were mortgages on city property, and a large amount of stock in corporations in which the president of the trust company was interested. At the time of the trial in May, 1925, the receiver of the trust company had been able to collect an amount sufficient to pay a 10 per cent. dividend on the outstanding debentures.

We think it a fair inference from the testimony that the stock securities amounting to many thousands of dollars were worthless. There is no testimony, however, as to the value of these stocks and bonds at the time they were placed in trust in the bank as security for the debentures. Whatever may be said of the fraudulent character of the transaction as between the plaintiff and the trust company, the question still remains as to whether the bank participated in the fraudulent representations. In *Scovel v. Isham*, 113 Neb. 238, the rule is stated as follows: "To maintain an action for damages for false representation, the plaintiff must allege and must prove what representation was made; that it was false and so known to be by the defendant charged with making it, or else was made without knowledge as a positive statement of known fact; that the plaintiff believed the representation to be true; that he relied on and acted upon it, and was thereby injured." An examination of the evidence fails to disclose that any actual representation was made by the bank, as an inducement to the plaintiff to invest his money in the debenture bond. The plaintiff's own testimony is to the effect that at no time

did he talk to any officer of the bank.  It is true that there was an interlocking of directors in each institution.  In 1921 there were nine common directors out of a total of fifteen.  In 1920 the record as to who constituted the directors of the trust company is not entirely clear.  At the time of the transaction there were no common officers in the two institutions.  The trust company kept an account with the bank and there was frequent interchange of business between them.

It will be noted that the certificate of the bank on the back of the debenture recites: "Securities referred to in the within debenture have been deposited with us by the Fidelity Trust Company to be held in trust for the holder of the debenture and subject to its terms."  On the face of the certificate is a recital that the debenture is secured by first farm mortages, but it also states that the trust company has the right to accept payment on such deposited securities, to execute releases of mortgages paid, or to substitute securities of equal value with the trustee, provided that the substituted securities shall be such as shall comply with the laws of the state of Nebraska governing the investment of trust funds.  Section 8068, Comp. St. 1922, defines the power of trust companies.  Subdivision 7 thereof prescribes what securities a trust company may hold, and, among others, designates state, county and municipal bonds, stocks, warrants, bills of exchange, notes, mortgages and other investment securities, with a limitation that a trust company may not hold bonds upon which the interest has been in default for a period of two years preceding the date of purchase, and stocks that have not earned annual dividends of at least 4 per cent. for at least three years just prior to the date of purchase.  Construing the language of the debenture in connection with the statute, it would seem that the trust company had the right in good faith to substitute, for the first farm mortgages, the stocks, bonds, warrants and other securities found in the possession of the bank, and that the obligation of the bank was fulfilled by safely holding the securities deposited with it.

The bank had no discretion in the selection of the securities.

If we consider the plaintiff's case resting upon the parole representation of Donahue, it would seem quite certain that the bank would not be held for his fraudulent statement, because the evidence fails to show that the bank participated in the wrongdoing. If we consider the case as based upon the representations set out on the face of the debenture, together with the certificate of the bank on the back thereof, then, as hereinbefore shown, the trust company, in exercise of good faith in the substitution of the securities, had the right to do just what it did do.

Is there any evidence of conspiracy between the bank and the trust company so that the bank would become liable for the acts and representations of the trust company? There is evidence that the trust company kept a checking account with the bank, and several instances when the bank charged the trust company's account with certain notes aggregating large sums, and that some of the notes ultimately proved to be worthless, but the record does not show whether the trust company had previously received credit in its account for these same notes, or whether it was a sale of the notes by the bank to the trust company or whether the notes were regarded as good at the time of the transaction. The record also shows that an officer of the bank had sold to the trust company a large block of stock which proved to be worthless, but there is no proof as to its worth at the time of the sale. The mere fact that a majority of the directors were common to both companies does not in itself prove a conspiracy. These instances are referred to as showing the weakness of the evidence as tending to show a conspiracy to defraud the plaintiff.

From an examination of the record, we conclude that the proof fails to establish any misrepresentation on the part of the bank which induced the plaintiff to purchase the debenture, and that no conspiracy between the bank and the trust company has been proved, so that the bank became answerable for the wrongdoing of the trust company. It

appears that Betsy Ann Myers died before the maturity of the debenture and under its terms the plaintiff became the survivor.

The trial court directed the jury to return a verdict for defendant upon the theory that it was an *ultra vires* act for the bank to become a trustee and therefore in no event could the bank be held liable. A considerable portion of the briefs are taken up with the discussion of the legal question presented by the *ultra vires* plea. However, in the view we have taken of the evidence, we deem it unnecessary, to discuss this question. Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.