MINNIE I. ASHBY, APPELLANT, V. RICHARD C. PETERS ET AL., APPELLEES.

FILED NOVEMBER 25, 1932. No. 28264.

*Howard Saxton, John E. Eidam* and *Allen & ·Requartte*, for appellant.

*Rose, Wells, Martin & Lane, Woods, Woods & Aitken* and *Virgil Haggart, contra.*

*George I. Craven, amicus curiæ.*

Heard before GOSS, C. J., DEAN, EBERLY, DAY and PAINE, JJ., and RYAN, District Judge.

RYAN, District Judge.

The plaintiff began this action in the district court for Lancaster county to recover damages from the defendants because of alleged fraud in the issuance and sale of certain bonds purchased by the plaintiff from the defendants, which bonds were designated "Peters Trust Building Refunding First Mortgage Real Estate Gold Bond," and purported on their face to be secured by a trust deed conveying the real estate known as the Peters Trust Building (formerly Bee Building) Omaha, Nebraska, to the Peters Trust Company, as trustee. The plaintiff purchased bonds in the amount of $1,600 during the years 1923 and 1924.

These bonds were issued on May 17, 1923, by the Keystone Investment Company, a corporation, which held a ninety-nine year lease upon the real estate known as the Peters Trust Building, Omaha, Nebraska. The bonds·

were issued to take up a former issue of $400,000 of similar bonds, which would mature June 1, 1924, and these were to mature June 1, 1933, bearing interest at 6 per cent. from June 1, 1923.

The entire stock of the Keystone Investment Company, except directors' qualifying shares, was owned by the Peters Trust Company. The Peters Trust Company was a corporation organized as a trust company under the laws of the state of Nebraska and had been doing a general trust business for many years. The defendants are the directors of the Keystone Investment Company. The building known as the Peters Trust Building is a seven story office building, located on the northwest corner of Seventeenth and Farnam streets, in Omaha, Nebraska. The Keystone Investment Company held a ninety-nine year lease on said building, dated February 1, 1917, and expiring ninety-nine years from March 1, 1917. The fee of the said building was incumbered by a first mortgage lien in favor of the New York Life Insurance Company in the sum of $250,000. The fee to the real estate was vested in the Bee Building Company, subject to said mortgage and to certain party wall agreements with certain adjoining property owners.

On December 10, 1929, the Peters Trust Company filed a voluntary petition in bankruptcy and on the same date was adjudicated a bankrupt. Herbert S. Daniel was appointed receiver on the same date and on March 26, 1930, qualified as trustee in bankruptcy of said bankrupt. On October 1, 1930, the Bee Building Company commenced an action in forcible entry and detainer against the Keystone Investment Company and others in the municipal court of the city of Omaha to secure possession of said real estate, alleging default in the rentals provided for in the ninety-nine year lease, and on October 15, 1930, obtained judgment for possession and restitution of said premises. On November 4, 1930, the Bee Building Company filed a petition in the district court for Douglas county, Nebraska, against the Keystone Investment Com-

pany and others, alleging nonpayment of the rentals covenanted to be paid in the ninety-nine year lease and pleading the judgment of the municipal court of the city of Omaha and its possession under said judgment of restitution, and praying that said ninety-nine year lease be canceled and set aside and that title in and to the real estate be quieted in the plaintiff. Answers were filed on the same date and on November 5, 1930, decree was entered, canceling the ninety-nine year lease and quieting title to the real estate in the plaintiff. Interest was paid regularly upon said bonds as it fell due at the offices of the Peters Trust Company, up to and including June 1, 1929. The interest coupons due December 1, 1929, and thereafter were not paid and the bonds thereupon became worthless.

In her petition plaintiff alleges that the defendants Peters, Claassen, Cameron, Potter and Weston, who were the directors of the Peters Trust Company and Peters National Bank, and the defendant Kennedy, who was the secretary of the Keystone Investment Company, conspired and agreed together and with one Paul E. Armstrong and Ralph E. Smith to cheat, wrong and defraud the plaintiff and other persons who might be induced by means of fraudulent representations to become purchasers, owners and holders of the bonds of the Keystone Investment Company.

The alleged fraudulent representations claimed by the plaintiff are: (1) That said bonds were first mortgage real estate gold bonds, secured by trust deed of even date therewith, conveying certain real estate known as the Peters Trust Building (formerly Bee Building), Omaha, Nebraska; (2) that the deed of trust was a first mortgage lien upon said real estate; (3) that the security for said bonds was sufficient to cause and would cause the bonds and interest coupons attached to be paid at maturity; and (4) that the said defendants each assumed the obligation of said bonds as principal and they each consented to charge and did charge their separate estates for the payment thereof.

The amended answer of the defendants admits the identity of the Keystone Investment Company and the Peters Trust Company and their relationship to each other, their general business activities as alleged in the petition, and that the Keystone Investment Company owned and held a ninety-nine year leasehold on said Peters Trust Building under a lease from the Bee Building Company, dated February 1, 1917, and that said leasehold interest was subject to a mortgage lien on said premises in favor of the New York Life Insurance Company in the amount of $250,000. Defendants further admit that on or 'about May 17, 1923, the Keystone Investment Company executed its bonds in the principal sum of $400,000 secured by a trust deed on the leasehold interest of said company. The defendants also plead that plaintiff's cause of action, if any, is barred by the statute of limitations. At the close of all the evidence the learned trial judge instructed the jury to return a verdict in favor of the defendants. This action is assigned as error.

Plaintiff testified that her dealings were with Ralph E. Smith, who was employed as a salesman of securities for the Peters Trust Company; that she told him she had some bonds that had matured and also a little money that she wished to invest and wanted to be sure and place it in an investment that was perfectly safe, and that she was going to rely on him to place it where it would be safe; that he said he would advise her to buy. Keystone Investment Company mortgage bonds, that there was nothing better; that it was a first mortgage real estate gold bond, secured by a first mortgage on the Peters Trust Building, and that they were perfectly safe. Plaintiff further testifies that she relied on the statements made to her by Ralph E. Smith and that she relied upon the integrity of the Peters Trust Company by whom he was employed; that she believed the statement on the face of the bond, wherein it is recited that it is a first real estate mortgage gold bond; and that she did not learn of the falsity of said statements until the fall of 1930. Other

witnesses for the plaintiff, who were also purchasers of Keystone Investment Company bonds, testified that substantially the same representations were made to them by other employees of the Peters Trust Company. A. C. Heine, secretary of the Plaat Deutscher Verein, testifies that he and another officer of this society went to the defendant Claassen, at his offices in the Peters Trust Building, and stated that they had some money of the society to invest in real estate first mortgage bonds, and that Mr. Claassen referred them to one of their salesmen, who recommended and sold them Keystone Investment Company bonds.

Plaintiff further relies on the resolution passed at a special meeting of the board of directors of the Keystone Investment Company on May 17, 1923, as evidence of the conspiracy alleged, wherein it is recited that "the Keystone Investment Company First Mortgage Real Estate Gold Bonds, executed by the Keystone Investment Company, secured by a trust deed on its leasehold interest on the property known as Peters Trust Building formerly the Bee Building * * * will mature June 1, 1924, and it is for the best interest of this company to issue refunding bonds in like amount, due June 1, 1933, bearing interest at 6 per cent. from June 1, 1923; said bonds to be used only for the purpose of retiring the above described bonds.

"Therefore, be it resolved that the Keystone Investment Company execute bonds aggregating four hundred thousand dollars due June 1, 1933, bearing interest from June 1, 1923, at the rate of 6 per cent., payable semiannually, with an option of paying any portion or all of the principal on any interest payment date at par by giving thirty days' notice, and secure the same by a trust deed on the above property in favor of Peters Trust Company, trustee; said bonds to be known as Peters Trust Building Refunding First Mortgage Real Estate Gold Bonds and to be used only for the purpose of retiring said Keystone Investment Company First Mortgage Real Estate Gold

Bonds; and for the purpose of carrying out this resolution, the president and secretary are authorized and directed to execute, in the name of the company, all bonds, trust deeds and other papers necessary and proper to execute said loan."

The evidence of the defendants is that the bonds were sold by circular only. Two different circulars are included in the record as exhibits 29 and 34. These exhibits both state clearly the nature of the security in these words: "These bonds are secured by a first lien on the leasehold of the Peters Trust Building." As to the value of the security, exhibit 29 states: "The leasehold is considered to be very valuable." Exhibit 34 states: "The value of the leasehold, as determined by the earning power of the property, is in excess of twice the amount of this issue." Mr. Smith also testifies that he wrote a letter to the plaintiff, a copy of which is in the record, in which he caused to be inclosed one of these circulars.

There is also testimony tending to show that these bonds sold on the open market in Omaha at from 98 to 101; that they were much in demand and frequently bond brokers could not find these bonds for their customers. The plaintiff appears to be a very intelligent woman, and her husband, though not a practicing lawyer, was admitted to the bar and was employed as a law clerk in the Union Pacific offices in Omaha. While not pleaded as a defense, the defendants were permitted to prove, over the objections of the plaintiff, that the phraseology of these bonds was left to a competent attorney in the employ of the Peters Trust Company, and this was urged as a defense.

It is contended in the briefs of the appellant that the basis for the direction of the verdict in favor of the defendants was upon the seventh ground of the motion, to wit: "The evidence shows without contradiction that the defendants committed the preparation of form of the bonds in controversy to a competent attorney and that he prepared the same in the exercise of his honest judg-

ment without any attempt on the part of any of the defendants to dictate or control the language used in said bonds, and thereafter the bonds were executed on behalf of the Keystone Investment Company; and were sold by the Peters Trust Company in reliance on the language thus employed by the said attorney." This is denied by the appellees, who contend that the appellant's charges of fraud and conspiracy were not supported by sufficient evidence to warrant the case being submitted to the jury. The record does not purport to show upon what ground the motion was sustained. However, we think that the seventh ground of the motion would be insufficient to warrant the direction of a verdict.

The case relied upon by the appellees in this record is that of *Slater Trust Co. v. Gardiner*, 183 Fed. 268. In that case the defendants were residents of the state of New York and the land was located in Missouri. The corporation had title to 700 acres of the land in fee and owned veins of coal in the lands of an additional 46,300 acres. Gardiner and his associates employed an experienced lawyer in New York, who, in turn, employed experienced counsel in St. Louis. The St. Louis lawyers prepared the trust mortgage and the bonds. In the *Slater* case the court stresses the fact that Gardiner did not employ the lawyers. "It must be remembered that Gardiner did not employ the lawyers who drew up these papers, and is not responsible for them as his agents." Moreover, this was an action in equity and the decision is based upon the principle of law that in suits in equity for alleged fraud lack of knowledge is a defense.

The case of *Peters v. Lohman*, 156 S. W. 783 (171 Mo. App. 465) a Missouri case, is also relied upon by the appellees. In that case it was held: "Directors of a corporation who make representations inducing a purchase of unissued stock are not liable at law for fraud where the representations are in accordance with information obtained from a reliable source, and are honestly believed to be true by the directors, whether the representations

are oral or are made in a prospectus." That case is distinguishable from the case at bar for the reason that it is not claimed that the defendants in this case obtained their information from any outside source. They were familiar with the business of both corporations and had first-hand knowledge of the securities back of the bonds in question. Moreover, in the case of *Peters v. Lohman, supra,* the evidence was held not to show the falsity of the representations as to the corporation holding leases on natural coal and gas lands.

The case of *Myers v. Union Nat. Bank,* 115 Neb. 49, is also relied upon by the appellees. In that case the trial court directed the jury to return a verdict for the defendants on the theory that it was an *ultra vires* act for the bank to become a trustee, and therefore, in no event, could the bank be held liable. The plaintiff brought the action to recover the sum of $9,400 from the defendant, by reason of alleged false and fraudulent representations in the purchase of securities. The representations were claimed to have been made by the Fidelity Trust Company and the First National Bank of Fremont, both of whom had failed and whose affairs were being wound up by a receiver. The defendant Union National Bank entered into a contract with the receiver of the First National Bank, whereby it took over the assets of the failed bank, with certain exceptions, and in consideration thereof agreed to assume and carry out all the liabilities and obligations of the failed bank, with certain exceptions. So, it will be seen that the action was brought solely against the defendant, and its liability, if any, rested upon the contract by which it was claimed it assumed the tort liability of the First National Bank. The court say: "An examination of the evidence fails to disclose that any actual representation was made by the bank, as an inducement to the plaintiff to invest his money in the debenture bond. The plaintiff's own testimony is to the effect that at no time did he talk to any officer of the bank. It is true that there was an interlocking of

directors in each institution. In 1921 there were nine common directors out of a total of fifteen. In 1920 the record as to who constituted the directors of the trust company is not entirely clear. At the time of the transaction there were no common officers in the two institutions. The trust company kept an account with the bank and there was frequent interchange of business between them." The court further said: "From an examination of the record, we conclude that the proof fails to establish any misrepresentation on the part of the bank which induced the plaintiff to purchase the debenture, and that no conspiracy between the bank and the trust company has been proved, so that the bank became answerable for the wrong-doing of the trust company." Having so concluded, the court found it unnecessary to discuss the legal question as to whether or not the act was *ultra vires*.

In the case of *Clark v. Edgar*, 12 Mo. App. 345, affirmed 84 Mo. 106, the court held:

"A declaration that certain bonds are 'first mortgage bonds' is untrue if there is a prior mortgage upon the property to secure promissory notes.

"A statement made by directors of a corporation, in print, across the face of bonds issued by them that the bonds are 'first mortgage bonds,' if untrue, will render the directors liable to an action of deceit at the suit of one who, on the faith of such statement, bought the bonds on the market." See *Bank of Atchison County v. Byers*, 139 Mo. 627.

It appears clearly from the record that there was a first mortgage of $250,000 upon the Peters Trust Building, and that the Keystone Investment Company was the owner of only a leasehold interest in the real estate, and while it is true that the bonds as issued contain the statement, "Reference being hereby made to said trust deed for a statement of the terms and conditions upon which the said bonds are issued and secured, and for a detailed description of the security therefor, and the rights of the said trustee and bondholders with respect to such se-

curity," still, had the purchaser taken the trouble to examine the trust deed, while she would have learned that the security was a leasehold interest for ninety-nine years, she would not have discovered the important fact that the fee of the premises as incumbered by the mortgage to the New York Life Insurance Company.

The question as to whether or not a leasehold for a term of ninety-nine years is real estate is discussed at length in the briefs, and while it is true that for the purposes of conveyancing a lease of more than one year is termed real estate and may be referred to as real estate in a highly technical sense, still it cannot be said that a lease for more than one year is real estate in the common acceptation of the term. In fact, this court has expressly stated the contrary. *Mulloy v. Kyle*, 26 Neb. 313; *Nelson v. Radcliffe*, 110 Neb. 54; *Zabriskie v. Greater American Exposition Co.*, 67 Neb. 581; *Lindburg v. Bennett*, 117 Neb. 66.

The testimony in the record is in direct conflict on many material points. This court has repeatedly held, and it is the settled law in this state, that the trial court should not direct the verdict of a jury, unless the evidence is so clear upon every point upon which the verdict must depend that reasonable minds could not come to any other conclusion. *Bank of Cortland v. Maxey*, 102 Neb. 20; *Continental Lumber Co. v. Munshaw & Co.*, 77 Neb. 456; *Westover v. Lewis*, 36 Neb. 692.

We conclude, therefore, that this case should have been submitted to the jury for determination of the issues of fact involved. The judgment is reversed and the cause remanded for further proceedings.

REVERSED.