TONY SAVORELLI ET AL., APPELLEES, V. LEON STONE ET AL.,
APPELLANTS.

96 N. W. 2d 222

Filed April 17, 1959. No. 34524.

*Baskins & Baskins,* for appellants.

*Maupin, Dent, Kay & Satterfield* and *William E. Morrow, Jr.,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by Tony Savorelli and Faye Savorelli, plaintiffs and appellees, who are husband and wife, against Leon Stone and Bess B. Stone, defendants and appellants, who are also husband and wife, to recover $9,000 from the defendants.

In their petition the plaintiffs alleged as the basis of their action that on October 8, 1952, the defendants jointly and severally sold, purported to sell, and contracted to sell and deliver to plaintiffs certain securities, i.e., preferred stock of Stoneward, Inc., a purported corporation, whose stock had not been authorized for sale, without the defendants, or either of them, having first complied with the Blue-Sky Law of the State of Nebraska, for the amount of $9,000. They further alleged that the money obtained had not been returned and they had received nothing of value for it. The

prayer was for judgment for this amount with interest at the rate of 6 percent from October 8, 1952.

The defendant Bess B. Stone filed a separate answer in which first she denied all allegations of the petition except those admitted to be true. Further answering, she admitted that prior to October 8, 1952, Tony Savorelli gave to her $650 which, at the request of Savorelli, was deposited to the account of Stoneward, Inc.; that thereafter, but before October 8, 1952, $4,350 was in like manner delivered and deposited to the account of Stoneward, Inc.; and that on or about October 8, 1952, Faye Savorelli delivered to Bess B. Stone $4,000 with directions that it be deposited to the account of Stoneward, Inc., but not all at one time. Further answering, she alleged that she never offered to sell any stock in Stoneward, Inc., that she had nothing to do with any attempt of plaintiffs to purchase any stock, and that as to the money, she received it as secretary and treasurer of the corporation and faithfully deposited it to its account.

The defendant Leon Stone also filed a separate answer. It contains no conflict with the answer of Bess B. Stone. It becomes necessary therefore only to summarize the following from its contents: He alleged that the money was received by him as an officer of Stoneward, Inc., and not in any individual capacity; that Tony Savorelli of his own accord attempted to procure stock in Stoneward, Inc.; that he was never solicited or invited to purchase stock; that he was informed that no stock could be sold and none could be issued in the absence of and before reorganization and revamping of the corporation; that he was advised that on such reorganization he would become one of the incorporators if he decided to get in in that manner; and that the money was received by and for the corporation and not by this defendant. A reply was filed wherein the allegations of the answers were generally denied.

Prior to the trial there was a pre-trial conference. The pre-trial order discloses that Stoneward, Inc., was

a corporation; that Leon Stone was president of the corporation and that Bess B. Stone was secretary; that the Department of Banking of the State of Nebraska had not granted a permit to sell stock either to Stoneward, Inc., or Leon or Bess B. Stone; that Stoneward, Inc., had not issued any corporate stock, either common or preferred, to the plaintiffs; and that the issue of law in the case was whether or not the defendants had an absolute liability to refund the sums advanced by the plaintiffs which the defendants have handled either as individuals or as officers of Stoneward, Inc. At the conference the parties waived a trial by jury.

The case was tried to the court without a jury and a judgment was rendered in favor of plaintiffs and against the defendants for $9,000 with interest at 6 percent per annum from October 8, 1952, amounting to $3,075, and interest on the judgment of $9,000 at 6 percent per annum from the date of judgment. Following the filing of a motion for new trial which was overruled, the defendants have appealed.

There is very little, if any, real dispute as to the controlling substance of the evidence. The substance of the evidence, about which there is no dispute, is the following: Stoneward, Inc., was incorporated with authorized capital stock of $25,000. There were 250 shares of common stock of a par value of $100 each. The issuance of preferred stock was not authorized. Leon Stone, Bess B. Stone, and Joseph H. Stone held 110 shares. Theodore W. Hayward and Evelyn Hayward held 110 shares. The remaining shares were not issued. The officers were Leon Stone, president, Theodore W. Hayward, vice-president, and Bess B. Stone, secretary-treasurer. The business being conducted at all times of concern here was the manufacture and sale of a rain boot.

The substance of the evidence of the plaintiffs is the following: In September 1952, Tony Savorelli, who will be hereinafter referred to as Savorelli, requested

of Leon Stone, who will be hereinafter referred to as Stone, that he be allowed to come into the corporation. Neither of the defendants ever solicited or' suggested that he come into or invest in stock of the corporation. Savorelli testified that other conversations were had and finally in one of them, the exact date of which is not known, but it was probably before September 22, 1952, he told Stone he would like to invest $10,000 and was told that he could invest that amount in stock. Thereafter, on or about September 22, 1952, $650 was delivered to Bess B. Stone and about one week later $4,350 was delivered. Later Faye Savorelli delivered an additional $4,000 to Bess B. Stone. The $650 was turned over at the insistence of Savorelli and the $4,350 was turned over without the knowledge of Stone at the time, both to be paid on Stoneward, Inc., debts. It is pointed out here that on the trial Mr. Dent, one of the attorneys for the plaintiffs, informed the court that no fraud was claimed by plaintiffs. No fraud was pleaded. The plaintiffs did not contend that they or either of them talked to Bess B. Stone about the transaction. Savorelli testified that Bess B. Stone was present on occasion, but he did not remember that any conversation was had with her. The $4,000 was delivered by Faye Savorelli to Bess B. Stone probably in October 1952.

The substance of the evidence of defendants is as follows: Stone testified that Savorelli told him that he wanted to get into business in Stoneward, Inc., but Stone told him he had no way of letting him in because he had nothing to offer but that he would talk to the corporation's attorney. Savorelli said he had $10,000 and would like to get in but was told there was no stock for sale. Stone said that in Council Bluffs, Iowa, Savorelli told him to write a check on the corporation for $650 in payment of a debt owed by the corporation and he would advance the money to meet the check since he was going to get into the corporation with his $10,000. Savorelli did advance the money to pay the

check which was deposited to the account of the corporation. Stone talked to the corporation's attorney and thereafter told Savorelli that "later on we could issue preferred stock, providing he signed over his voting rights for five years." The response was: " 'Anything you say, Leon, is all right.' " He told Savorelli "that I didn't know how we was going to come out, and I didn't want him to lose his money, that I thought he was taking a big gamble." He never solicited Savorelli to come into the business. Savorelli paid in an additional $4,350 and still an additional $4,000, all of which was deposited to the account of Stoneward, Inc. Stone said that no stock certificates were ever requested. He said that by an instrument (exhibit B) he was acknowledging that he had sold the plaintiffs $9,000 worth of preferred stock and that it would be delivered at a later date. He said also that exhibit C was in recognition of the fact that he had sold $9,000 worth of preferred stock in Stoneward, Inc., and that it would be delivered when the articles of incorporation had been amended.

The attorney for the corporation testified and his testimony, to the extent that it is important, is in summary as follows: On October 25, 1954, he talked to Savorelli who asked when the preferred stock (of Stoneward, Inc.) would be issued to him, and whether or not he could take the $9,000 which had been advanced to Stoneward, Inc., as an income tax loss. As to the preferred stock inquiry the attorney responded that under the articles of incorporation 75 percent of the stockholders must vote affirmatively to amend the articles which could not be accomplished since Hayward could not be found and until they could get together 75 percent no amendment could be had.

Bess B. Stone testified on behalf of the defendants. A summary of her testimony in its entirety is not required. She said that the money received from plaintiffs was deposited to the credit of Stoneward, Inc. The effect of her testimony as to the incidents leading to

the payment and receipt of the money was that she took no active part therein at any time except to receive the money and place it to the credit of Stoneward, Inc. She was at all times secretary-treasurer.

The record of the testimony together with three exhibits attached as a part of the bill of exceptions leads to certain definite conclusions. Some of these are that Stoneward, Inc., was a corporation with authority to issue common stock but with no authority to issue preferred stock. This became known to the plaintiffs before they parted with any money. On and before October 8, 1952, the plaintiff, Tony Savorelli, induced the defendant, Leon Stone, to permit the plaintiffs to advance to the corporation $9,000 and in consideration thereof Stone on behalf of the corporation agreed on reorganization for that purpose and, when reorganization could be effected, to issue for the $9,000 5 percent preferred stock of the corporation. The agreement was confirmed first by a receipt, exhibit A, dated October 8, 1952, executed in the name of the corporation and signed by Leon Stone, president, and Bess B. Stone, secretary-treasurer. It was further confirmed by a letter, exhibit C, dated November 17, 1952, signed Stoneward, Inc., by Leon Stone. On November 17, 1952, an agreement, exhibit B was entered into between Stone and the plaintiffs, the effect of which was to give to Stone the power to vote the stock of the plaintiffs for a period of 5 years in case of reorganization and issuance of stock in the corporation to the plaintiffs. This agreement was signed by Stone and the plaintiffs as individuals. A copy was receipted for on behalf of the corporation by Leon Stone, president. Bess B. Stone participated in none of the negotiations antecedent to the agreements and the transfer of funds, although she was informed as to them. The failure of Stoneward, Inc., to meet, reorganize, and provide for the issue of preferred stock was not occasioned by any preventative act or purpose on the part of the defendants or

either of them. It was occasioned by failure to obtain a quorum of stockholders on account of inability to locate Theodore W. Hayward. This was known to plaintiffs. The plaintiffs do not contend that they were ever mislead or misinformed as to any detail of any of the transactions involved. It is specifically stated in the record that no fraud was involved.

In an approach to a determination of the question of whether or not there is a liability of the defendants or either of them to the plaintiffs it should be said that the transaction involved here is defined by section 81-314, R. R. S. 1943, as a violation of what is commonly referred to as the Blue-Sky Law.

It should be further pointed out that at the time this transaction took place no specific remedy for recovery of the money paid out by the purchaser from the person or persons perpetrating the violation was to be found in the Blue-Sky Law. There are such provisions now but they were not enacted until 1955, hence they are not applicable in this case. See §§ 81-347 and 81-348, R. R. S. 1943.

It should be further pointed out that no benefit can flow to the plaintiffs from section 81-335, R. R. S. 1943, which is as follows: "Any issuance, assignment, sale, exchange or transfer of any securities in violation of any of the terms, provisions or purposes of sections 81-302 to 81-346, shall, in any civil action involving said act of issuance, assignment, sale, exchange or transfer, be deemed prima facie evidence of fraud upon the part of the issuer, assignor, transferor or seller." It is because there was a judicial admission in the record in this case that there was no fraud that this section has no application. In Kipf v. Bitner, 150 Neb. 155, 33 N. W. 2d 518, it was said: "A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged

by the opponent is true." See, also, Kuhlmann v. Platte Valley Irr. Dist., 166 Neb. 493, 89 N. W. 2d 768. A further reason why nothing is available to plaintiffs under section 81-335, R. R. S. 1943, is that the plaintiffs have not pleaded that there was fraud.

The basic question for determination on the pleadings, the evidence, and the judicial admission of the plaintiffs is narrowed to that of whether or not parties who have entered into a contract for the sale of securities with a corporation, on the strength of which they parted with money, and there has been a failure of performance on the part of the corporation, may look through the corporation to an officer or officers who acted as agent or agents and recover from him or them on the sole ground that the corporation and the agent or agents had not complied with the Blue-Sky Law by obtaining a permit for the sale of the securities contracted to be sold by the corporation.

Except as to the inferences which inhere in sections 81-335, 81-347, and 81-348, R. R. S. 1943, which, as pointed out, avail nothing to the plaintiffs in this case, there is nothing in the Blue-Sky Law which declares, under circumstances such as appear in this case, a right to bypass a contracting party and proceed directly in a civil action against the agent of the corporation in whose behalf a contract has been made even though the agent be an officer.

No cases under general law from this jurisdiction have been cited the effect of which is to say that under such circumstances a civil action may be maintained which so bypasses the contracting party. The decisions of this court are to the contrary. It is only where the corporate transaction is grounded in fraud, based on false information, or that the contract itself is void and the party seeking a recovery is not in pari delicto with the corporation, that there is personal liability on the part of officers as agents of the corporation.

In Fremont Carriage Mfg. Co. v. Thomsen, 65 Neb.

370, 91 N. W. 376, it was said: "Where one acting as the agent of a corporation makes a contract on its behalf, which is binding upon it, his acts in that behalf create no individual or personal liability against him."

In Ashby v. Peters, 124 Neb. 131, 245 N. W. 408, it was said: "The officers of a corporation are responsible for the acts of the corporation, and in a suit for fraud, if fraud is proved, the law will look through the corporation to the officers who acted in the matter, and the officers who acted in the premises are proper parties defendant." See, also, Paul v. Cameron, 127 Neb. 510, 256 N. W. 11; First Trust Co. v. Carlsen, 129 Neb. 118, 261 N. W. 333; Wells v. Carlsen, 130 Neb. 773, 266 N. W. 618; Allied Building Credits, Inc. v. Damicus, 167 Neb. 390, 93 N. W. 2d 210.

In Becker v. Wilcox, 81 Neb. 476, 116 N. W. 160, 129 Am. S. R. 690, 16 L. R. A. N. S. 571, it was said: "The rule that courts will not permit the recovery of the consideration paid upon an executed contract prohibited by statute does not apply to the vendee of a lottery ticket, for whose benefit the statute was enacted." The point of the opinion in this case is that what is meant by "contract prohibited by statute" is that the right to contract with regard to a particular subject matter is prohibited by statute, such as in that case, a lottery ticket. There is nothing in the opinion the effect of which is to say that the rule applies to a subject matter such as is involved here which is in itself a proper subject of commercial transaction not prohibited but only conditionally restricted.

In Rhines v. Skinner Packing Co., 108 Neb. 105, 187 N. W. 874, this court held that a contract for the sale of stock without a permit was void. This however was not in declaration of any principle of law of this state. It was in declaration of the public policy of the State of Missouri. In the opinion, it was said: "The sale, if a Missouri contract, seems to be void when tested by the public policy of Missouri, as declared by the judi-

ciary of that state in enforcing statutes of this kind." It was not declared in that opinion directly or by inference that the public policy there recognized represented the public policy of this state. No comparable public policy was ever declared in this state until the enactment of sections 81-347 and 81-348, R. R. S. 1943, which as has been stated was in 1955, whereas this transaction took place in 1952.

In the light of these observations the conclusion reached is that there is no liability in favor of plaintiffs and against the defendants on the pleadings and evidence in this case. The judgment is therefore reversed and the cause remanded with directions to dismiss the action.

REVERSED AND REMANDED WITH DIRECTIONS.