HARRY C. DAVIS, APPELLANT, v. JAMES KEITH WALKER ET AL., APPELLEES.

104 N. W. 2d 479

Filed July 29, 1960. No. 34704.

*Max Kier,* for appellant.

*Barney, Carter & Buchholz, Nate C. Holman,* and *Muffly & Snyder,* for appellees.

Heard before MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Harry C. Davis, brought this action against defendants, James Keith Walker, Dennis H. Sexson, Rock H. Castellano, Michael E. Layon, W & M Oil Company, a Nebraska corporation, and Wyoming Oil Company, a Delaware corporation, seeking recovery under the provisions of sections 81-347 and 81-348, R. R. S. 1943, which became effective September 18, 1955, and are a part of an act known as the Blue-Sky Law.

Plaintiff's amended petition alleged in substance that defendants, except Wyoming Oil Company which merged with W & M Oil Company on June 21, 1956, and thereby assumed all debts, liabilities, and duties of whatsoever kind or nature of W & M Oil Company, did sell, issue, exchange, and transfer to plaintiff in Nebraska certain Wyoming stocks, securities, and interests in five separate transactions, designated as 3-a to 3-e inclusive, in violation of sections 81-302 to 81-346, R. R. S. 1943, because defendants never did possess licenses and permits from the Department of Banking of this state authorizing them to do business as brokers or salesmen. Plaintiff also alleged that he never received any income or recovery from any such stocks, securities, and interests; that the total consideration paid by plaintiff to defendants therefor was $9,450; and that he complied with section 81-348, R. R. S. 1943, by depositing with the clerk of the district court for the use and benefit of defendants all such stocks, securities, and interests received by plaintiff from defendants. Plaintiff's prayer was for a finding that the aforesaid allegations were true; that defendants were liable to plaintiff for $9,450 with interest from the respective dates of the transactions; or for such sum as equity shall determine to be due.

Defendants Walker, W & M Oil Company, and Wy-

oming Oil Company answered, denying generally but admitting merger of the two oil companies prior to the institution of this action as alleged, and alleging that plaintiff purchased a 2 percent working interest in an 80-acre drill site lease known as State of Wyoming B lease, but alleged that such transaction was negotiated at plaintiff's special instance and request without solicitation by defendants. The last allegation is not supported by the evidence and is entirely immaterial in any event. Their prayer was for judgment in their favor and recovery of costs.

Defendant Castellano answered, denying generally and alleging that he never sold, issued, exchanged, or transferred to plaintiff any securities or interest therein in violation of the statutes as alleged; that he never expressly or impliedly authorized or appointed any person to act as broker or salesman or to negotiate for the issue, sale, exchange, or transfer of any securities within the State of Nebraska; that he had no notice or knowledge of the publication of any advertisement by defendant corporations; that he had not been a director of either corporation for more than 2 years before commencement of plaintiff's action, which was barred by the statute of limitations; and that the statutes relied upon by plaintiff were unconstitutional in certain respects which were not presented or argued in said defendant's brief. His prayer was for dismissal, recovery of costs, and equitable relief.

Defendant Layon answered, admitting the merger of defendant corporations as alleged, but denying generally and alleging in substance the same allegations as appear in Castellano's answer. Layon also alleged that plaintiff had not complied with the provisions of section 81-348, R. R. S. 1943, because he failed and refused to deposit with the clerk of the district court the securities described in transactions 3-a, 3-b, and 3-c of plaintiff's petition. He further alleged that plaintiff, with the intent of securing financial gain, induced and assisted in

inducing persons to purchase securities not exempt under section 81-312, R. R. S. 1943, and did receive therefor financial gain without being first licensed as broker or salesman, as required by statute, therefore plaintiff was not entitled to seek relief in equity. In connection with the last allegation, we find no competent evidence in this record to sustain such contention. Defendant Layon's prayer was for dismissal, recovery of costs, and equitable relief.

Plaintiff's replies to each of the foregoing answers were general denials of allegations appearing in defendants' answers, except such as admitted the allegations of plaintiff's petition. Requests for admissions were served upon defendants and filed, together with answers thereto, and the cause was tried to the court whereat evidence was adduced and a judgment was rendered. The judgment found that service was had on all defendants except Dennis H. Sexson who is thus not primarily involved here; that between August 18, 1955, and March 21, 1956, plaintiff purchased certain securities from defendant, W & M Oil Company, now merged with Wyoming Oil Company, except only a promissory note dated March 21, 1956, for $1,500, representing a loan from plaintiff to W & M Oil Company, which was in default and for which Wyoming Oil Company was liable to plaintiff. The judgment found, however, that plaintiff's right to recover consideration paid by him for the securities was based upon equitable rescission and that the authority prescribed in section 81-348, R. R. S. 1943, required restitution of the exact securities purchased. It then found that plaintiff had failed to make restitution of the securities described in his petition or deposit same with the clerk of the district court for the use and benefit of defendants. For such reason the court found the issues generally against plaintiff and in favor of defendants and each of them with respect to recovery of the consideration paid for such securities, except that plaintiff should have judg-

ment against Wyoming Oil Company, successor to W & M Oil Company, upon the promissory note aforesaid, for $1,500 with interest at 5 percent from March 21, 1956, and costs of the action. Judgment was rendered accordingly, and plaintiff's petition was dismissed as to defendants Walker, Castellano, and Layon, with recovery of costs by each such defendant from Wyoming Oil Company.

Plaintiff's motions for new trial were overruled, and he appealed, assigning in substance and effect that the findings and judgment of the trial court were erroneous and contrary to the evidence and law, "except only as to the award of judgment on the promissory note." We sustain the assignment to the extent and in the manner hereinafter set forth, after trial de novo under rules too well established to repeat.

Section 81-347, R. R. S. 1943, provides: "Any person, except a person who shall have obtained from the Department of Banking a permit to do business as a broker or salesman, who shall within the State of Nebraska sell, issue, exchange, or transfer any security or interest therein in violation of sections 81-302 to 81-346, shall be liable to the purchaser of the security for the value of the consideration paid by the purchaser less the amount of any income or recovery received thereon." In that connection, it is proper to point out here that the record is conclusive that plaintiff did not ever receive "any income or recovery" from the securities involved.

The terms "security" or "securities" are defined by section 81-304, R. R. S. 1943, and the shares of stock and undivided interests here involved are admittedly included in such definitions. The same section separately provides that: "The term 'person' or 'persons' shall include every corporation, partnership, joint stock company, declaration of trust association and every other character of association, and every individual, whether such corporation, partnership, joint stock company or

association is foreign or domestic, and irrespective of whether such individual is a resident or nonresident of this state." The section also provides that the term "issuer" means and includes "* * * every person, both real and corporate who, as maker or issuer, or in the name or names of whom, or upon the responsibility or liability of whom, securities are proposed for issue, are issued, have been issued, or hereafter are issued."

Section 81-348, R. R. S. 1943, provides: "An action to enforce liability as provided in section 81-347 must be commenced within three years after the date of the sale, issuance, exchange, or transfer of the security and may be brought in any county in which the cause of action or some part thereof arose, or in any county where the defendants, or some one of the defendants, resides or may be summoned. Such an action shall be heard and determined by the court as an action in equity. At the time such an action is commenced, the plaintiff shall deposit with the clerk of the district court for the use and benefit of the defendant the security involved in the action." In connection with the last sentence, we conclude that plaintiff complied therewith in every respect, and that the trial court erroneously held otherwise. The evidence is conclusive that plaintiff so deposited every exact material instrument representing the securities involved which had been received by him. Any evidence adduced by defendants with relation thereto was equivocal and is incredible when viewed in the light of positive evidence and undisputed facts appearing in this record. Also, contrary to defendants' contentions, plaintiff was not required to deposit his own assignments of the securities back to defendants or to offer to make good any loss defendants may have suffered as a result of their unlawful transactions. This is also a proper place to point out that section 81-331, R. R. S. 1943, which provides for a 2-year statute of limitations, deals with distinguishable matters, and that the limitation of 3 years provided in

section 81-348, R. R. S. 1943, and applicable here, has not barred plaintiff's action. We also point out here that the constitutional validity of the Blue-Sky Law and provisions therein, comparable with those at bar, have generally been upheld by state and federal courts in cases too numerous to cite. It is sufficient to simply cite Annotation, 87 A. L. R., pages 45 to 60, and authorities cited and discussed therein. We hold that sections 81-347 and 81-348, R. R. S. 1943, are not unconstitutional as in violation of Article I, section 25, Constitution of Nebraska, as presented and argued by defendant Layon. Authorities cited and relied upon by him are entirely distinguishable.

At the outset we start with the admitted fact that neither W & M Oil Company nor its successor Wyoming Oil Company, which by merger assumed all debts, liabilities, and duties of W & M Oil Company, ever had any license or permit from the Department of Banking of this state to issue, sell, exchange, or transfer in this state any shares of stock or working interests in oil or gas drill sites in Wyoming or ever had any licenses or permits to operate as brokers or salesmen. Also, no individual defendant ever had any license or permit from the Department of Banking authorizing him to issue, sell, exchange, or transfer in this state any such stock or securities. As a matter of fact, such licenses and permits were admittedly withdrawn or entirely denied. In that connection, defendant Walker was president and director of both such corporations at all times here involved. Defendant Layon was a director and officer of W & M Oil Company from October 3, 1955, to April 15, 1956. Defendant Castellano was a director and officer thereof from April 30, 1955, until November 30, 1955. Also, they were all shareholders in W & M Oil Company, and were paid salaries by said corporation as officers thereof.

The first transaction, designated as 3-a, upon which plaintiff sought recovery of $950, occurred on August

18, 1955, when he executed a contract agreement to purchase and purchased in Nebraska from W & M Oil Company a 1 percent working interest in a described drill site oil lease known as "Lucian Robinson #1" located in Wyoming. Plaintiff paid therefor $750 by check dated August 18, 1955, and payable to W & M Oil Company, which payment was receipted for on the same date by letter, signed "W & M Oil Co., J. K. Walker President," wherein it was recited that it covered "the purchase of a 1% interest in the Lucian Robinson #1, located in Crook County, Wyoming."

It appears that an operating agreement was not delivered to plaintiff until September 26, 1955, and thereafter plaintiff paid $200 on November 25, 1955, covering his share of the estimated cost of completion of drilling a well on the Lucian Robinson No. 1 lease. Also, on that date plaintiff was sent a letter acknowledging receipt from him of his check for said $200 "covering the estimated cost of completion," which letter was signed "W & M Oil Company, Michael E. Layon, Vice President." However, the purchase and sale transaction was complete on August 18, 1955, prior to September 18, 1955, the effective date of sections 81-347 and 81-348, R. R. S. 1943. In that connection, this court held in Savorelli v. Stone, 168 Neb. 419, 96 N. W. 2d 222, that: "Prior to the enactment in 1955 of sections 81-347 and 81-348, R. R. S. 1943, there was no specific remedy for recovery of money paid out for the purchase of securities sold in violation of the Blue-Sky Law." Since plaintiff relies exclusively thereon, we conclude that he cannot recover on his first alleged transaction, designated as 3-a, because the purchase was actually made and completed prior to the date said sections became effective.

The second transaction, designated as 3-b, upon which plaintiff sought to recover $1,500 and interest, occurred on September 28, 1955, when he executed a contract agreement to purchase and purchased in Nebraska from W & M Oil Company a 2 percent working interest in a

described 160-acre drill site oil lease known as Moore No. 1, subject to a 12½ percent override, in Crook County, Wyoming. For such interest plaintiff paid $1,500 on September 30, 1955, which was receipted for by "W & M Oil Company, J. K. Walker, President," on October 3, 1955.

The third transaction, designated as 3-c, upon which plaintiff sought recovery of $1,500 and interest, also occurred on September 28, 1955, when plaintiff executed a contract agreement to purchase and purchased in Nebraska a 2 percent working interest in a described 80-acre drill site oil lease known as Wyoming B, subject to a 12½ percent override, in Crook County, Wyoming. For such purchase plaintiff paid $1,500 on September 30, 1955, which was receipted for by "W & M Oil Company, J. K. Walker, President," on October 3, 1955. In that connection, transactions 3-b and 3-c are related in that they both occurred on September 28, 1955, and two adjustments were subsequently made by reducing the override from 12½ percent to 4 percent in both transactions 3-b and 3-c, and by giving plaintiff a 2 percent interest in a 160-acre lease site, instead of an 80-acre lease site, in the third transaction, 3-c, "as a compensation for your (plaintiff's) patience" as said, when on January 19, 1956, W & M Oil Company, J. K. Walker, president, mailed to plaintiff assignments of his interest theretofore purchased as adjusted, together with an explanation thereof. In that connection, we call attention to the fact that defendant Layon was not a director or officer when the foregoing purchases were originally made and completed, and he is not liable as such upon transactions 3-b and 3-c.

The fourth transaction, designated as 3-d, upon which plaintiff sought recovery of $4,000 and interest, involved the admitted purchase by him in Nebraska of 1,000 shares of W & M Oil Company stock on or about December 14, 1955. In that connection, on December 15, 1955, plaintiff gave W & M Oil Company his note for $4,000,

upon the back of which was endorsed "Rec'd. Payment $400 DHS Balance — $3600.00 W & M Oil Co. by J. K. Walker." Such $400 was paid by plaintiff's check dated December 14, 1955, payable to W & M Oil Company, which check bore the notation "Payment on Stock." On January 19, 1956, plaintiff paid W & M Oil Company $1,600 by check payable to it. On January 31, 1956, W & M Oil Company billed plaintiff for a $2,000 balance due for his purchase of said stock, and on March 2, 1956, plaintiff paid same by check payable to W & M Oil Company and received a receipt for "Total Balance Due." On February 8, 1956, W & M Oil Company, by J. K. Walker, president, wrote plaintiff at his home in Beatrice advising him of a five to one stock split by W & M Oil Company whereby for his 1,000 shares plaintiff became the owner of 5,000 shares. The letter said in part, "We are looking forward to greater expansion and growth of our Company." On August 16, 1956, following a merger of the two corporations, J. K. Walker, president of Wyoming Oil Company, issued and delivered to plaintiff 7,500 shares of its stock in lieu of plaintiff's W & M Company stock, thereby giving plaintiff five free 500-share stock certificates. We also point out that Castellano never was a director or officer of Wyoming Oil Company and was not a director or officer of W & M Oil Company when transaction 3-d originated and was completed, and he is not liable as such upon transaction 3-d.

In that connection, this record discloses that on September 19, 1957, an information was filed by the State of Nebraska in the district court for Gage County, charging in count IV thereof: "That James Keith Walker did on or about December 14, 1955, in Gage County, Nebraska willfully and unlawfully sell certain securities consisting of 1,000 shares of capital stock of the W & M Oil Company, a corporation, without having secured from the Department of Banking of the State of Nebraska a permit to do business as a broker or salesman."

The charge admittedly related to the sale of the same stock as that sold to plaintiff in transaction 3-d. Thereafter, on September 25, 1957, said defendant appeared in open court with counsel, was duly arraigned, entered a plea of guilty to count IV, was found guilty as charged, was put on probation for 3 years, and was duly sentenced by the court to pay a fine of $1,000 and costs. Further, on February 16, 1957, a petition was filed in the district court for Lancaster County, entitled "State of Nebraska, ex rel. the Department of Banking of the State of Nebraska, J. F. McLain, Director, Relator vs. James Keith Walker, Harold E. Kistner, and Wyoming Oil Company, Respondents," seeking to enjoin respondents who had not been licensed as brokers or salesmen from further violating the Blue-Sky Law of Nebraska by issuing, selling, and exchanging or offering to sell or exchange in Nebraska securities consisting of shares of the capital stock of Wyoming Oil Company, and other securities including undivided fractional working interests in oil and gas leases located on land in Wyoming. Thereafter, on April 11, 1957, after a hearing whereat evidence was adduced by the parties, a permanent injunction was rendered, granting the relief sought by relator.

The fifth transaction, designated as 3-e, upon which plaintiff sought recovery of $1,500 and interest, involved a loan to W & M Oil Company evidenced by a promissory note dated March 21, 1956, for $1,500, payable to plaintiff at Beatrice, Nebraska, 1 year after date with interest at 5 percent, and signed W & M Oil Company by J. K. Walker, president, D. H. Sexson, secretary. The loan was made by plaintiff because Walker informed him that the company needed money. The $1,500 loan was paid to W & M Oil Company by plaintiff's check payable to it and dated March 21, 1956. In that connection, on March 21, 1956, W & M Oil Company, J. K. Walker, president, wrote plaintiff a letter enclosing the company's note for $1,500, and informing him that he had the privilege in connection therewith of having his

choice to select and purchase "up to 3% interest in any lease that we drill in which we are selling interests * * * after the test has been drilled" and "within sixty (60) days after the well has been put on production," which purchase would then be applied "against the principal of this note." Plaintiff never accepted such offer or made any such selection or choice, and there is no evidence that any well was ever thereafter put on production. The trial court awarded plaintiff a judgment against Wyoming Oil Company for recovery upon that transaction, and no appeal was taken therefrom.

There can be no doubt that defendants Wyoming Oil Company and James Keith Walker are liable to plaintiff upon transactions 3-b, 3-c, and 3-d. The primary question here is whether or not Castellano is liable as officer and director upon transactions 3-b and 3-c, and whether or not defendant Layon is liable as officer and director upon transaction 3-d, bearing in mind that admittedly Castellano was a director of W & M Oil Company from April 30, 1955, until November 30, 1955, and Layon was a director from October 3, 1955, until April 15, 1956. Also, both such defendants were shareholders in and vice-presidents of W & M Oil Company and they drew salaries as such therefrom until they no longer served as directors.

As early as June 11, 1955, counsel for W & M Oil Company wrote a letter, saying: "With reference to our discussion of the other day, you must be certain that the corporation does not sell shares of its stock pending the qualification of the issue which has been submitted to the S.E.C. * * * A number of questions have been asked that must be answered to the satisfaction of the Commission and I would hope it could be cleared for offer sometime soon. It is my understanding that all offerings so far submitted for the sale of undivided (fractional) working interests in the various leases have been accepted by the S.E.C. I hope that we may obtain a similar clearing from the Department

of Banking in Nebraska. Even though the company may not agree with some of the technical requirements of 'government' they must be met." Counsel then wrote on the face of that letter in his own hand that it should be placed "with minute book or other records."

The minutes disclose that on October 3, 1955, at 10 a. m., a special meeting of stockholders in W & M Oil Company was held with 90,000 out of 100,000 shares outstanding represented, whereat Walker, Sexson, Castellano, and Layon were present and were elected directors. There president Walker reviewed the activities of the company since the last meeting of stockholders, and called upon Castellano to report on prospects of the new field which seemed to have been opened up, and Castellano advised that he was preparing a detailed report of the Wyoming land to be mailed to each shareholder and interest-holder. The articles of incorporation and by-laws were then voted to be changed in particulars unimportant here.

Also, the minutes disclose that on October 3, 1955, at 2 p. m., a special meeting of the board of directors was held with Walker, Sexson, Castellano, Layon, and counsel present. There president Walker presided and discussed recent acquisitions of leases in Wyoming, Colorado, and Oklahoma, and asked for approval of arrangements to purchase leases from one Ed Moore on described land in Crook County, Wyoming, and the taking over of a government lease in Florida. Discussion was then had concerning the fact that most acquisitions of the past had been had in the name of the company, but that by side arrangement several employees who participated in the promotions had interests in them, and upon advice of counsel it was unanimously determined that all future deals should be entered into in the name of and for the sole benefit of the corporation. The amendments of the articles and by-laws approved by the shareholders on October 3, 1955, at 10 a. m., were read, approved, and adopted. Thereupon Walker was

elected president with a salary fixed at $800 a month; Castellano was elected vice-president, geological, with a salary fixed at $400 a month; Layon was elected vice-president, land, sales and development, with a salary fixed at $400 a month; and Sexson was elected secretary-treasurer, with a salary fixed at $400 a month. Also, counsel for the company was retained at a salary of $350 a month, and after considerable discussion, sales commissions were fixed at 20 percent as fair and proper. The then situation with the Department of Banking was discussed, and it was determined that every effort should be carried on to obtain the necessary licenses and permits, and counsel then stated that no sales should be made until they were obtained.

The minutes disclose that at a special meeting of the board of directors on December 6, 1955, Walker, Sexson, Layon, Castellano, and counsel were present, and the minutes of the preceding meeting were read and approved. There counsel outlined charges which the state had brought against one of the company's representatives, and pointed out the seriousness thereof. He stated that further meetings were scheduled with the Department of Banking with respect to its refusal to approve the offerings, and warned that no sale thereof should be attempted under any circumstances until approved. In answer to a question about offerings in Missouri, counsel advised that with limited exceptions, so long as S.E.C. clearance had been obtained, they might so proceed in Missouri, but not to exceed the limitation. There also Castellano's resignation previously submitted was accepted, effective November 30, 1955.

The minutes disclose that a special meeting of the board of directors was held on January 6, 1956, with Walker, Sexson, Layon, and counsel present, together with Castellano, who was no longer a director but serving as geologist. There the minutes of the last meeting were read and approved and discussion was had of the problems facing the company because of failure to

receive sufficient sums of money from time to time. It was determined that president Walker should send out a bulletin describing the stock split of W & M Oil Company and renew his request of the need for payment of drilling completion costs. Counsel there advised that the Department of Banking had denied all requests for approval and licenses; stated that no one employed by the company was authorized to sell securities or working interests in Nebraska; cautioned that severe penalties could be imposed for violation of that requirement; and stated that any future offerings would have to be submitted to the state before sales could be made. There, among other things, it was resolved that Layon, as vice-president, should have the same authority to sign, execute, and acknowledge any and all instruments as the president of the corporation was theretofore authorized to execute, including execution of certificates of capital stock of the corporation, except that in executing and signing checks or drafts drawn against the bank account of the company, they should require the names of Walker and Layon in addition to the name of the corporation. There also Layon offered to transfer to the company Wyoming holdings owned by him having an estimated value of $48,000 for the one-half interest owned by the company in Copan Oil Field leases in Oklahoma, and president Walker stated that such offer would be submitted to the owners of the other half interest for their consideration.

Thereafter, on January 9, 1956, counsel wrote another letter to Walker, president, and W & M Oil Company, pointing out again that as advised by the Director of the Department of Banking of Nebraska, the statutes prohibited the solicitation or exchange of securities unless the salesman is licensed to do so, which was conclusive as far as stock sales are concerned; that for such reason they should reconsider their method of operation; and that they could not sell any of the Wyoming deals to Nebraska persons unless and until new ones

were submitted for approval in this state. He also said: "Since you have indicated that one or two sales were made in Nebraska * * * I suggest that the persons to whom those sales were made would, under the law, be entitled to return their interests and receive back the money paid for them. And, make certain that no future sales are made to Nebraska people of any Wyoming interest or stock in the company."

The minutes disclose that at a meeting of the board of directors on March 10, 1956, Walker, Layon, Sexson, and counsel were present. There the minutes of the last meeting were read and approved and the exchange of a one-half interest in the Copan lease to Layon, as proposed by him on January 6, 1956, was ratified and approved, and counsel advised Layon that it would be improper for him to compete with the company in development of his personal properties, especially while he was receiving a salary from the company, which Layon promised he would not do. Counsel advised also that something must be done about litigation pending against the company and liquidation of a judgment already obtained by one named person in North Platte.

The minutes disclose that at a meeting of the board of directors on March 24, 1956, Walker, Layon, Sexson, and counsel were present, and the minutes of the meeting of March 10, 1956, were read and approved. There Layon tendered his 1½ percent working interest in Moore Well No. 1, and drill block located in Crook County, Wyoming, in full settlement of an advance of $1,500, which had been made to him by W & M Oil Company on October 5, 1955, just 2 days after he first became a director. His proposal was accepted and placed in the minute book. A prepared financial statement of W & M Oil Company from September 1, 1955, through March 15, 1956, was received in evidence. It shows a total gain of $146.37 after payment of listed salaries and expenses, and listed income from oil operations, rental

income, discount taken, sundry income, loans, and sales of 3,630 shares of stock.

The minutes disclose that at a meeting of the board of directors on April 17, 1956, Walker, Sexson, Layon, and counsel were present. Castellano was also present but admittedly he was not then a director. There Layon's previously-submitted resignation, effective April 15, 1956, was accepted, and a resolution was adopted directing the president and secretary to meet with Layon and effect a fair settlement of the division of property interests held by him, and that they should also meet with Castellano and make a similar settlement and division with him.

The minutes disclose that at a meeting of the board of directors on May 21, 1956, Walker and Sexson were present, together with Layon who was not then a director. There president Walker offered a proposed agreement for the merger of W & M Oil Company and Wyoming Oil Company. Same was approved, together with a resolution calling a special meeting of the stockholders for June 21, 1956, to approve or disapprove the merger. Such was thereafter so approved, and a copy of the merger agreement and appointment of Walker as resident agent for Wyoming Oil Company were filed in the Secretary of State's office.

Contrary to contention of the defendants, there is no competent evidence in this record that the stocks and securities involved here were exempt from operation of the Blue-Sky Law.

Sections 81-347 and 81-348, R. R. S. 1943, created a specific remedy which did not exist at common law. See Savorelli v. Stone, *supra*. It is the general rule that statutes will not be understood as effecting any change in the common law beyond what is clearly indicated, and statutes in conflict with the common law must be strictly interpreted. See, Strauel v. Peterson, 155 Neb. 448, 52 N. W. 2d 307; Platte Valley P. P. & I. Dist. v. County of Lincoln, 163 Neb. 196, 79 N. W. 2d 61.

The two sections of the statute aforesaid do not expressly purport by their language to make officers and directors of a corporation personally liable simply because they are officers and directors thereof. Be that as it may, such statutes did not change the preexisting responsibilities and duties of officers and directors of a corporation in handling its affairs and transacting its business. In that connection, as long ago as Ashby v. Peters, 128 Neb. 338, 258 N. W. 639, 99 A. L. R. 843, this court concluded that directors of a corporation may not ordinarily delegate their corporate responsibilities as directors to others and avoid liability therefor; that directors are held to that degree of care which men of common prudence take of their own concerns; that a corporation has no thought or will of its own, and its every act is the act of those individuals who are running it; that where the duty of knowing facts exists, ignorance due to neglect of duty on the part of a director creates the same liability as actual knowledge and a failure to act thereon; and that where fraud is committed by a corporation, which is the situation in the case at bar, it is time to disregard the corporate fiction and hold the persons responsible therefor in their individual capacities. See, also, Ashby v. Peters, 124 Neb. 131, 245 N. W. 408. We have also concluded that an officer or director of a corporation occupies a fiduciary relation towards the corporation and its stockholders, and is treated by courts of equity as a trustee; and that every violation by a trustee of a duty required of him by law, whether willful and fraudulent, or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust. Whaley v. Matthews, 134 Neb. 875, 280 N. W. 159; Rettinger v. Pierpont, 145 Neb. 161, 15 N. W. 2d 393.

In 47 Am. Jur., Securities Acts, § 46, p. 598, citing many authorities, it is said: "The general principle that a director or officer of a corporation does not incur personal liability for its torts merely by reason of his offi-

cial character and is not liable for torts committed by or for the corporation unless he has participated in the wrong has been incorporated by express terms in some of the statutes providing for personal liability of directors and officers of a corporation which issues or sells securities in violation of statutory requirements. Most statutes of this type condition the personal liability of a corporate director or officer upon his personally participating, or aiding in any way, in making the illegal sale. The same principle is applied where personal liability of a corporate director or officer for an illegal sale of securities is predicated upon statutes which contain no express provisions as to the personal liability of such director or officer." See, also, 53 C. J. S., Licenses, § 77, p. 785, citing authorities.

In the case at bar, defendants Walker, Layon, and Castellano, while acting as officers and directors, not only should have known but they actually did know beyond preadventure of a doubt that W & M Oil Company never had any license or permit to operate as a broker or salesman or to issue, sell, exchange, or transfer in Nebraska any security or interest in Wyoming, as here involved, and that no officer or salesman of said company had any license or permit to do so. It is true also, from evidence heretofore set forth, that said defendants, while officers and directors, not only had the duty to be responsible for the transactions involved but also they participated both directly and indirectly in the illegal transactions for the use and benefit of the W & M Oil Company and themselves as shareholders and officers, and they received payment of their salaries as such officers at least in part from the proceeds of such transactions. In that connection, Wyoming Oil Company, by its merger with W & M Oil Company, as "constituent companies" assumed all of the debts, liabilities, and duties of W & M Oil Company.

For reasons heretofore stated, we conclude that plaintiff cannot recover upon the first transaction, desig-

nated as 3-a, and that the judgment of the trial court against defendant, Wyoming Oil Company upon the fifth transaction, designated as 3-e, should be affirmed. On the other hand, we conclude that plaintiff is entitled to recover as against defendants Walker, Castellano, and Wyoming Oil Company as prayed upon the second and third transactions, designated as 3-b and 3-c, and that plaintiff is entitled to recover as against defendants Walker, Layon, and Wyoming Oil Company as prayed upon the fourth transaction, designated as 3-d.

In such respects as aforesaid, the judgment of the trial court should be and hereby is affirmed in part and reversed in part, and the cause is remanded with directions to render judgment for plaintiff in conformity with this opinion. All costs in this court are taxed to defendants, James Keith Walker and Wyoming Oil Company.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.